UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTWION CARTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16-cv-00323-JMS-DLP ) |
| MARION COUNTY SHERIFF'S OFFICE, et al., | ) ) ) ) |
| Defendants. | ) |

**Entry Discussing Motions for Summary Judgment**

Plaintiff Antwion Carter filed this action pursuant to 42 U.S.C. § 1983 and state law alleging that he was assaulted while he was confined at the Marion County Jail (the Jail) and that the defendants failed to protect him from this assault. Carter brings constitutional claims against Deputy Eric Taylor and Sergeant Richard Brown. He also sues Taylor, Brown, and the Marion County Sheriff's Office (MCSO)[1] for state law negligence. Carter also sues the inmate who assaulted him. The parties seek summary judgment on Carter's claims against the MCSO, Taylor, and Brown. For the following reasons, the defendants' motion for summary judgment is **granted** and Carter's motion for summary judgment is **denied**.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the

---

[1] While Carter identifies this defendant as the Marion County Sheriff's Department, it appears from the record that the correct name is the Marion County Sheriff's Office. **The clerk shall amend the docket to reflect the correct name of this defendant.**

admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

Carter has filed a cross-motion for summary judgment, but that motion simply states "the designated evidence establishes there is no genuine issue of material fact and that the Plaintiff is entitled to judgment as a matter of law." Dkt. 57. Further, Carter did not file a response to the motion for summary judgment. Carter therefore has not presented evidence to dispute the evidence presented by the defendants.[2] Accordingly, the facts alleged in the defendants' motion are deemed admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts); *see* S.D. Ind. Local Rule 56-1 ("A party

---

[2] The Court notes that Carter filed a document titled "Nunc Pro Tunc Contemptanious Objection." Dkt. 61. The Court informed Carter that it was unclear what relief was sought in that filing and provided Carter an extension of time to file a response to the motion for summary judgment. Dkt. 63. The time provided to respond has passed and the motions for summary judgment are not ripe for ruling.

opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Facts

### A. *The Assault on Carter*

At the time of the incident at issue in this case, Carter was an inmate at the Jail. He was being held in the Disciplinary Lockdown Segregation unit, known as "deadlock." Inmates on deadlock are confined to individual cells and are held separately from inmates in general population. On deadlock, only one inmate is permitted to be outside his or her cell at any given time and inmates receive only one hour per day outside of their cells to shower or for strict recreational purposes. More than one inmate should never be out of his cell at a time. There are ten cells in the deadlock section.

When Carter was placed in deadlock, his cell was next to Hardister's cell. Carter testified at his deposition that he and Hardister did not previously know each other and that from the time Carter was reclassified to deadlock on March 19, 2014, to the time the incident occurred on March 23, 2014, Hardister and Carter never spoke to each other. Hardister didn't talk to anyone. Carter witnessed Hardister spit and masturbate when Carter was in deadlock.

In the morning of March 23, 2014. Hardister entered Carter's cell and started rummaging through his commissary items. Carter was asleep in his cell at the time and did not hear Hardister enter. Carter believes that Hardister entered his cell because his cell door was opened by a guard

and Hardister was not yet back in his cell. Carter believes the deputies made a mistake and were negligent in performing their duties.

Carter woke when he heard Hardister rustling through his commissary bag. Once Carter awoke, and Hardister realized it, Hardister punched Carter in the face a number of times. Carter then left his cell and went to press the call button for assistance, but the call button was not working. Hardister tried to pursue Carter after Carter left his cell. Carter used a mop wringer to defend himself while he yelled for help. Hardister then went and hid in the shower. After "some minutes" two Jail deputies came to Carter's assistance.

The deputies found and placed Hardister back in his cell. After that, Carter received attention from the medical staff. Carter had a bloody nose and head pain. The medical staff provided Carter two days' worth of ibuprofen for pain. A sergeant was present while the medical staff evaluated Carter. Carter does not know who the sergeant was or if it was Sergeant Brown.

Before the incident, Carter stated that he told an unidentified "officer" he was "having problems" with Hardister. Carter contends that the deputies failed to protect him from other inmates because they did not ensure that Hardister was back in his cell before they opened the door to Carter's cell. After the incident, Carter informed the deputies that Hardister attacked and threatened him. After the incident, Carter informed Taylor about the incident and requested medical attention. Taylor created an entry in OMS to document the incident. After Taylor created the OMS entry documenting the incident, he told Brown about it.

B. *Reporting of Safety Concerns at the Jail*

On the day of the incident, Deputy Eric Taylor was working at the Jail as a deputy sheriff for MCSO. Taylor has been working for MCSO since October 2006. His duties included maintaining floor security, ensuring inmate recreational hour, and escorting inmates to and from

various locations. Before the incident, Taylor and Carter had no communication and Carter never informed Taylor of any fear, issue, risk, threat, or problem relating to Hardister. Taylor did not know that the incident would occur.

Sergeant Richard Brown was working at the Jail on the date of the incident as a supervisor of jail security. Brown has been working for MCSO since May 2004. His duties included the management of deputies below him, and ensuring those deputies fulfilled their job responsibilities. Before the incident, Brown and Carter had no communication. Carter had not informed Brown of any fear, issue, risk, threat, or problem, relating to Hardister. Brown did not know the incident would occur.

If an inmate at the Jail expresses concern about his or her safety, the proper procedure is for the MCSO employee to document the matter in the Offender Management System ("OMS"), and, to the extent possible, relocate one or both of the inmates. Before the incident, no OMS entry was created that memorialized any communication or conversation between Deputy Taylor and Carter or between Sergeant Brown and Carter.

C. *Tort Claims*

The Office of Corporation Counsel ("OCC") is responsible for handling all Tort Claim Notices for all Marion County and City of Indianapolis-related torts. The OCC's records indicate that Carter did not serve a Tort Claim Notice on the OCC or the MCSO for damages he allegedly sustained on or about March 23, 2014, while he was incarcerated at the Jail.

### III. Discussion

The parties move for summary judgment on Carter's state law negligence claims and constitutional claims.

A. *Negligence Claims*

Carter alleges that the defendants were negligent in failing to prevent Hardister's attack. The individual defendants argue that the Indiana Tort Claims Act (ITCA) prohibits suit against them personally. The MCSO argues that Carter's claims are barred because he did not file a tort claim notice.

1. Individual Defendants

The individual defendants argue that the ITCA bars claims against them. The ITCA bars lawsuits against public employees personally if it is alleged that the employee was acting within the course and scope of his employment. That subsection states: "A lawsuit alleging that an employee acted within the course and scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). *See also Lessley v. City of Madison, Ind.*, 654 F.Supp.2d 877, 902 (S.D. Ind. 2009) (under the ITCA, motorists could not sue city police officers personally for state torts based on acts that were within the scope of officers employment; only city could be liable for officers' alleged torts).

The claims against the individual defendants are based on acts that took place while they were working at the Jail. These acts were thus in the course of their employment. While the ITCA allows suits against individual defendants when the plaintiff alleges that the defendant's acts were: "1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code 34-13-3-5(c). There is no allegation or evidence that the defendants' actions fell into any of these categories. The ITCA therefore bars claims against individual defendants in the circumstances alleged in this case. Accordingly, the individual defendants are entitled to summary judgment on the negligence claims against them.

2. MCSO

The MCSO also moves for summary judgment on the claims against it because Carter did not file a Tort Claims Notice. To pursue his negligence claims against the MCSO, Carter must have filed a Tort Claims Notice with the MCSO or the OCC within 180 of the incident. Ind. Code § 34-13-3-8(a) (requiring notice to be served on the governing body of the political subdivision). It is undisputed that Carter never filed a Tort Claim Notice with the MCSO or the OCC. Carter attached a Tort Claim Notice directed to the Indiana Office of the Attorney General to his complaint. But there is no evidence that this Notice was directed to the MCSO or the OCC – the governing bodies of the MCSO. This notice therefore does not comply with the ITCA. *See Id.*; *Alexander v. City of S. Bend*, 256 F. Supp. 2d 865, 876 (N.D. Ind. 2003) (notice directed to the Attorney General and not the political subdivision who is the subject of the suit is not sufficient). Because Carter did not satisfy the requirements of the ITCA, the MCSO is entitled to summary judgment on his negligence claims.

B. *Failure to Protect Claims*

Carter also asserts claims under 42 U.S.C. § 1983 against Taylor and Brown based on their alleged failure to protect him from Hardister's assault. Taylor and Brown seek summary judgment on these claims.

Among other things, Taylor and Brown argue that they were not personally responsible for the incident. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in

an alleged constitutional deprivation. . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Whether supervisory personnel are sufficiently involved in an alleged constitutional violation such that they may be liable for damages often depends on that person's knowledge of, and responsibilities regarding, the alleged harm.

Carter has presented no evidence connecting Taylor and Brown to the acts at issue. While Taylor and Brown were both working at the Jail on the date of the incident, there is no evidence that they had any connection to, or responsibility for, the opening of Carter's door before Hardister was returned to his cell. There is also no evidence that either Taylor or Brown was aware of the assault taking place and failed to intervene. While Carter testified at his deposition that he notified an officer that he and Hardister were "having problems," he does not identify the officer to whom he spoke. Without such evidence, Carter cannot show that Taylor and Brown were responsible for his injuries. They are therefore entitled to summary judgment on his constitutional claims.

C. *Carter's Claims against Hardister*

Carter also sued Hardister for the assault. The Court must determine whether it is appropriate to exercise supplemental jurisdiction over this state-law claim pursuant to 28 U.S.C. § 1367. For the reasons that follow, the Court relinquishes supplemental jurisdiction over this claims and dismisses them without prejudice.

The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction

. . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

While the Court decided the pendent state-law claims against the MCSO and Taylor and Brown, the relevant factors weigh in favor of the Court following the "usual practice" and relinquishing supplemental jurisdiction over the claims against Hardister. *Groce*, 193 F.3d at 501. Neither the Court nor Carter has expended significant resources on this claim. And it is unclear from the current record how this claim should be decided. In addition, the statute of limitations will not have run on this claim, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not

present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [53], is **granted** and Carter's motion for summary judgment, dkt. [53], is **denied**. The supplemental claims against Hardister are dismissed without prejudice.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/2/2018

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ANTWION CARTER
128406
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL
Traci.Cosby@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov